J. Fred Engler v. Commissioner. Lenore S. Engler v. Commissioner.
Engler v. Commissioner
Docket Nos. 26657 and 26658.
United States Tax Court
1952 Tax Ct. Memo LEXIS 349; 11 T.C.M. (CCH) 40; T.C.M. (RIA) 52011; January 21, 1952
*349 Wentworth T. Durant, Esq., and S. L. Mayo, Esq., 625 Republic Bk. Bldg., Dallas, Tex., for the petitioners. J. Frost Walker, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $2,707.18 for 1944 and $1,840.51 for 1945 against J. Fred Engler, and deficiencies of $2,707.18 for 1944 and $1,729.93 for 1945 against Lenore S. Engler. The only issues for decision are whether the Commissioner erred in determining that $9,848.94 received by Engler in 1945 was earned commissions or otherwise taxable income in 1944 or 1945 and, in the alternative, whether he erred in determining it to be taxable in 1944 instead of 1945. Findings of Fact The petitioners are husband and wife. They reside in Dallas, Texas. They filed separate returns for 1944 and 1945 with the collector of internal revenue for the second district of Texas. The husband, herein referred to as Engler, has been engaged in the insurance business for many years. He had had business relations, as an agent, with the National Fire Insurance Company of Hartford, hereafter called National, prior to 1942. A Dallas insurance agency, known *350 as I. Reinhart & Son, was for sale in 1942. National wanted Engler to buy it so that it would bring additional business to National. Engler bought the agency for $51,000 in September 1942 and continued to own and operate it through 1944 and 1945. He used $1,000 of his own funds and $50,000 of borrowed funds to pay the purchase price. National loaned him $25,000 at 3 per cent for this purpose and Engler entered into a contract, a copy of which is incorporated herein by this reference, agreeing to assign to National the newly acquired agency and two others owned by him as part of the security for the loan. The loan was repaid by March 23, 1944 and the security was released. Engler and National entered into an agreement dated in August 1944, a copy of which is incorporated herein by this reference, whereby he recognized his indebtedness to National "in the sum of Twenty-five Thousand ($25,000) Dollars for balances due and unpaid as of July 1, 1944, consisting of premiums collected and not remitted or premiums due but uncollected" on which he requested National not to demand payment and for which he agreed to give a joint note signed by him and his wife. Security was given for the indebtedness. *351 The debt was repaid by November 19, 1947, and the security was then released. Engler was entitled to commissions on insurance premiums coming to National on insurance obtained through his agencies. He used an accrual method of accounting in his business. Some commissions he retained from premiums collected by him while others were paid to him or credited to his accounts on its books by National. Commissions in the amount of $9,848.94 accrued for the last six months of 1944. They had not been retained by Engler, but were paid to him by National on April 25, 1945. The petitioners did not report this income either for 1944 or for 1945. The record does not show how these commissions were accounted for on the books of Engler or National or precisely what they represented under the agreement between Engler and National respecting commissions, but both parties knew that Engler was entitled to them under that agreement and that they accrued on business transacted in the last half of 1944. The Commissioner, in determining the deficiencies, added to income for 1944 $9,848.94 with the explanation "It is held that you have elected to report commissions in the year earned and that year earned *352 commissions in 1944 have been understated by $9,848.94." He also added the same amount to income for 1945 with the explanation that the amount has been held to constitute income taxable in 1944, "However, since you contend that such amount represents income taxable in 1945, this alternative adjustment is made in order to protect the government's interest." Opinion MURDOCK, Judge: The petitioners contend that the $9,848.94 did not represent commissions or any other type of taxable income but they have failed to prove their contention. Counsel for the petitioners argues that National rather than the petitioners purchased the agency in 1942 and the $9,848.94 was a reimbursement by National to Engler for a part of the purchase price advanced by him for National. But Engler testified unequivocally that he purchased the agency and was the owner of it thereafter. There is no doubt in the record about the fact that he was the purchaser. He borrowed $25,000 of the purchase price from National, but he had repaid that loan before these particular commissions accrued. The evidence fails to show any significant connection between these commissions and the purchase of the agency. The fair preponderance *353 of the evidence shows that the amount represents commissions due Engler under his working arrangement with National for writing insurance. He reported the other commissions similarly earned and should have reported these in 1944 when they accrued. Of course, as the Commissioner recognizes, the same commissions were not also income for 1945, the year in which they were actually paid to Engler. Decisions will be entered under Rule 50.